## A98A2019. PYRON v. THE STATE.
### (514 SE2d 51)

RUFFIN, Judge.

A jury found Rosa Mae Pyron guilty of three counts of cruelty to children. In her sole enumeration of error, Pyron contends that the trial court erred in failing to allow her to present expert testimony regarding the interview techniques employed in questioning the victim. Since such testimony involves an area of expertise beyond the ken of the average juror, the trial court erred in refusing to permit Pyron's expert to testify. Accordingly, we reverse.

In September 1994, the victim, who was four years old, and his two siblings moved in with his grandparents, Rosa Pyron and her husband.[1] On March 21, 1996, Lenell Bailey, the victim's mother, visited the victim and noticed marks on his back and side. Bailey notified a caseworker from the Department of Family & Children Services (DFACS), and the children were removed from Pyron's home. After the victim identified his grandmother as the person who had injured him,[2] Pyron was arrested for cruelty to children. In May 1996, Officer Lorene Jackson of the Gwinnett County Police Department conducted a videotaped interview of the victim that the State tendered into evidence. The victim, who was five at the time of trial, took the stand and the prosecutor questioned him about the alleged incidents of abuse. During her case in chief, Pyron sought to introduce the testimony of Dr. Robert Shaffer, a psychologist, regarding the techniques employed by Officer Jackson and the prosecutor in their examinations of the victim. Outside the presence of the jury, Dr. Shaffer testified that children, in general, tend to be more susceptible to suggestion than adults. Dr. Shaffer testified that a few of the victim's responses "appear[ed] to have been influenced by certain experiences prior to being asked the question" and that there were specific instances in which the victim's responses revealed "a very

---

[1] Pyron's husband also was charged with cruelty to children, but the jury acquitted him and, thus, he is not a party to this appeal.

[2] According to the victim, his grandmother whipped him with an extension cord and with a belt and burned him both with an iron and by putting him in a tub of hot water.

specific pattern." To provide an example, Dr. Shaffer testified that the victim described his grandmother "as the mean grandmother . . . and the residence that he lived in as the mean house." According to Dr. Shaffer, this pattern "seem[ed] to portray an emotional tone of the response set that [he] believe[d] th[e] child acquired in interaction with some other individual." Following the State's argument that this testimony improperly interfered with the jury's assessment of credibility, the trial court excluded Dr. Shaffer's testimony.

It is well-established that "[e]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981) (battered woman's syndrome); see also *Brown v. State*, 262 Ga. 833, 834 (2) (426 SE2d 559) (1993) (sanity); *Bethea v. State*, 251 Ga. 328, 331 (10) (304 SE2d 713) (1983) (cause of death). In a case of first impression, the Supreme Court recently addressed the propriety of admitting expert testimony regarding interviewing techniques in a child sexual abuse case. *Barlow v. State*, 270 Ga. 54 (507 SE2d 416) (1998).

The Supreme Court noted that "[t]estimony intended to show that an investigating officer's questions of the child victim were inappropriate represents evidence only an expert could give on matters not within the knowledge of a juror. It would assist the jury directly in evaluating the weight given to that testimony." (Citation and punctuation omitted.) Id. at 54. The Supreme Court further noted that "cross-examination of a child witness could be ineffectual if the child sincerely takes his or her recollections to be grounded in facts and does not remember the improper interview procedures which may have suggested them. Similarly, cross-examination of the interviewer is not necessarily sufficient." (Citation and punctuation omitted.) Id. at 54-55. Thus, the Supreme Court concluded that expert testimony on this issue should be admitted because the effect of such techniques "is a subject with which a lay juror may be unfamiliar." Id. at 54.

Unlike *Barlow*, this case involves physical rather than sexual abuse. This distinction, however, does not warrant a different result since the underlying concerns remain the same. In *Barlow*, the Supreme Court acknowledged that "[s]pecial interviewing processes are necessary to get information from child victims, who are often immature, inarticulate, frightened, and confused about the abuse they have received." (Punctuation omitted.) Id. Since child victims of physical abuse are likely to exhibit these same qualities, expert testimony on the subject of interviewing techniques is equally relevant in a trial involving physical rather than sexual abuse.

Another concern mentioned by the Supreme Court is the need

for a level playing field. Id. at 55. In the past, Georgia courts have adopted a liberal approach to the introduction of evidence by the State in cases involving either the physical or sexual abuse of children. See *Miller v. State*, 179 Ga. App. 100 (1) (345 SE2d 647) (1986) (prior incident); *Phelps v. State*, 158 Ga. App. 219-220 (2) (279 SE2d 513) (1981) (similar transactions); *Smith v. State*, 154 Ga. App. 497, 499 (1) (268 SE2d 714) (1980) (prior transactions). We have recognized that "since there is seldom a competent witness other than the defendant to what occurred in a child abuse case, courts should be . . . liberal in admitting corroborative evidence." *Smith*, supra at 499. Conversely, we should endeavor to ensure that a defendant is not unduly hampered in presenting a defense to a charge involving either physical or sexual abuse of children. Allowing an expert to testify "on the narrow issue of the proper method of interrogating a child" serves this end. *Barlow v. State*, 229 Ga. App. 745, 751 (494 SE2d 588) (1997) (Smith, J., concurring in part and dissenting in part).

Here, as in *Barlow*, 270 Ga. 54, the expert witness clarified that he was not commenting on whether the victim was telling the truth. Rather, he offered his testimony for the limited purpose of addressing the interviewing techniques employed by the State and the dangers involved in using such techniques. Dr. Shaffer was competent to testify on this issue, and his testimony was both relevant and necessary to Pyron's defense. Accordingly, the trial court abused its discretion by excluding his testimony.

In so holding, we create no new rule regarding the admissibility of expert testimony. To the contrary, "[w]hether or not a witness is allowed to testify as an expert [remains] a question for the sound discretion of the trial court and such discretion, unless abused, will not be disturbed." (Punctuation omitted.) *Fatora v. State*, 185 Ga. App. 15, 19 (4) (363 SE2d 566) (1987). "Certainly a trial court has the discretion to exclude expert testimony regarding how techniques of law enforcement officers and caseworkers would cause false memories or mistaken attributions, where the proffered testimony is not based upon either the facts within the expert's knowledge or other facts admitted in evidence." *Barlow*, 270 Ga. at 56.

In this case, however, the trial court provided no basis whatsoever for its decision to exclude the expert's testimony. The court gave no indication that it found the credentials of the expert witness to be lacking. Furthermore, a review of the record demonstrates that Dr. Shaffer's opinion was based upon facts admitted into evidence. The State argued that the expert testimony should be excluded because it "directly interferes with the jury's assessment of the ultimate credibility of the child witness." "However, the fact that limited expert testimony regarding proper interview techniques indirectly involves the

child's credibility does not render it inadmissible." *Barlow*, supra at 55. What an expert cannot do is give an opinion that the victim's allegations of abuse are false. See *Barlow*, supra; *Jennette v. State*, 197 Ga. App. 580, 582 (3) (398 SE2d 734) (1990). Because the expert witness's testimony comes within the holding of *Barlow* and because the trial court provided no viable basis for excluding this testimony, the trial court abused its discretion in refusing to permit the expert witness to testify regarding proper techniques for interviewing children.

*Judgment reversed. Pope, P. J., concurs. Beasley, P. J., concurs in the judgment only.*

DECIDED MARCH 8, 1999 —
RECONSIDERATION DENIED MARCH 22, 1999.

*Darel C. Mitchell*, for appellant.
*Daniel J. Porter, District Attorney, Nancy J. Dupree, Assistant District Attorney*, for appellee.