**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 30, 2022**

# In the Court of Appeals of Georgia

A22A1142. HARVARD v. THE STATE.

MCFADDEN, Presiding Judge.

Jefferson Harvard was convicted in a bench trial of child molestation, rape, and incest. He appeals from the denial of his motion for new trial. Harvard argues that trial counsel was ineffective, but he has not shown both deficient performance and prejudice. Harvard argues that he did not knowingly and intelligently waive his right to a jury trial, but the trial court did not clearly err in finding that he did so. Harvard argues that the trial court erred by denying his post-trial motion for the victims' medical and school records, but he has not met his burden for showing entitlement to the records. So we affirm.

1. *Evidence at trial.*

Viewed in the light most favorable to the verdicts, see *Butler v. State*, 313 Ga. 675, 678 (2) (872 SE2d 722) (2022), the evidence showed that the victims were Harvard's stepdaughters, M. W. and J. W. M. W., who was 20 years old at the time of trial, testified that, for two years, starting when she was 14, Harvard touched her breasts and her pubic area and digitally penetrated her. J. W., who was 17 years old at the time of trial, testified that Harvard frequently raped her from the time she was nine years old until she turned 13, when the victims, their mother, and their half-brother moved from the family home. Both victims testified that Harvard threatened to harm their family if they disclosed the abuse.

2. *Ineffective assistance of counsel*.

Harvard argues that trial counsel was ineffective in four ways: she failed to present any expert witnesses on his behalf; she failed to object to hearsay; she failed to introduce evidence of the victims' behavior; and she failed to obtain and introduce the victims' school and medical records. He has not shown both deficient performance and prejudice. So his claims of ineffective assistance of counsel fail.

> To succeed on a claim that counsel was constitutionally ineffective, [Harvard] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674)

2

(1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. Id. at 688-690 (III) (A). And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

*Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018) (citations and punctuation omitted).

(a) *Failure to present expert witnesses*.

Harvard argues that trial counsel should have presented an expert witness to testify about the victims' forensic interviews. Harvard called an expert in forensic interviews to testify at the motion for new trial hearing. She testified that the person who conducted the forensic interviews of the victims failed to explore whether third-

3

party communications influenced the victims; failed to explore whether there was an alternative explanation for the conduct they described, such as family dysfunction or a history of physical violence; and failed to explore the victims' potential motivation for making the allegations. The expert also testified that the interviewer could have done a better job of asking follow-up questions and getting more detail. She testified that although she did not believe the interviewer led the victims to make their statements, the interviewer did ask two leading questions. According to the expert, the interviewer's errors, apart from two leading questions, were errors of omission, failures to pursue certain lines of inquiry. Consequently,

> although [Harvard] proffered [this expert] testimony . . . on interviewing techniques at the hearing on the motion for new trial, he failed to demonstrate a reasonable possibility that this testimony would have resulted in a different outcome at his trial. To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant is required to make an affirmative showing that *specifically demonstrates how counsel's failure would have affected the outcome of the case*.

*Weeks v. State*, 270 Ga. App. 889, 894-895 (3) (a) (608 SE2d 259) (2004) (citation and punctuation omitted; emphasis supplied), overruled in part on other grounds in *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020). In other words, Harvard "was

4

required to offer more than mere speculation that the . . . expert testimony would have bolstered his defense at trial." *Mangrum v. State*, 291 Ga. 529, 531 (731 SE2d 761) (2012) (punctuation omitted).

Here, the expert's criticism of the interviewer's errors and omissions does not "specifically demonstrate[ ] how counsel's failure would have affected the outcome of the case." *Weeks*, 270 Ga. App. at 895 (3) (a). So arguments founded on the expert's testimony "amount[] to no more than speculation about the evidence, which is not sufficient to show that there is a reasonable probability that the outcome of the trial would have been different." *Hood v. State*, 308 Ga. 784, 790 (2) (843 SE2d 555) (2020). This is particularly true since the trial court judge — who sat as the fact finder in this bench trial — stated in his order denying the motion for new trial that he never watched the recordings of the forensic interviews because the "victims testified during the trial and were both subject to a thorough and sifting cross examination by trial counsel."

The cases cited by Harvard do not require a different result. He cites *Darst v. State*, 323 Ga. App. 614, 623 (2) (a) (ii) (746 SE2d 865) (2013), which is physical precedent only and is factually distinguishable. In *Darst*, trial counsel had not made a conscious strategic decision about whether to use an expert so his performance was

deficient. Id. Here, Harvard's trial counsel testified at the motion for new trial hearing that she discussed the possibility of hiring an expert with Harvard and that he wanted an expert to testify that the victims were lying. But see *Barlow v. State*, 270 Ga. 54, 55 (507 SE2d 416) (1998) ("an expert witness for the defense cannot give an opinion that the victim made false allegations of molestation, because such testimony directly addresses the credibility of the victim"). Counsel testified that "you're not going to get an expert to say that." She testified that she could challenge the victims' credibility through cross-examination to establish multiple inconsistencies in their statements and testimony as well as to show that they did not like Harvard's heavy-handed discipline so that they "made up the story to get him out of the house." So unlike the trial counsel in *Darst*, here trial counsel made a conscious, informed decision not to call an expert.

Contrary to Harvard's characterization in his brief, *Barlow*, 270 Ga. at 54, involved alleged trial court error, not a claim of ineffective assistance of counsel. In *Barlow*, our Supreme Court held that the trial court erred by refusing to permit the defendant to introduce expert testimony about forensic interviewing techniques because "such testimony involves an area of expertise beyond the ken of the average layman[. So] the defendant in a child molestation case is entitled to introduce expert

testimony for the limited purpose of providing the jury with information about proper techniques for interviewing children and whether the interviewing techniques actually utilized were proper." Id. (Of course, Harvard was tried in a bench trial, not a jury trial.)

Similarly, *Hall v. State*, 201 Ga. App. 626, 626-627 (2) (411 SE2d 777) (1991), involved alleged trial court error, not a claim of ineffective assistance of counsel. There, we held that the trial court erred in refusing to allow the defendant to question expert witnesses, who had personally observed the victim, about whether the victim exhibited behavior which, in the opinions of the witnesses, was typically displayed by a sexually abused child.

In *Goldstein v. State*, 283 Ga. App. 1, 6-9 (3) (b) (640 SE2d 599) (2006), we held that trial counsel provided ineffective assistance by failing to present expert testimony to challenge opinions of the state's expert witnesses in a child molestation case. In support of his ineffective assistance claim, the defendant in *Goldstein* presented deposition testimony from an expert witness rebutting medical opinions to which the state's experts testified at trial. See id. at 7-8 (3) (b). Here, the forensic interviewer did not testify, so she had not presented an opinion that Harvard needed to rebut.

7

Because Harvard's argument is based on speculation (and the trial court never considered the forensic interviews) Harvard has not demonstrated that there is a reasonable probability that, had trial counsel obtained an expert to testify about flaws in the forensic interviews, the result of the trial would have been different. In other words, "[p]retermitting whether trial counsel's failure to call an expert witness was deficient performance, we agree with the trial court that [Harvard] cannot establish that he was prejudiced by the alleged deficiency." *Kirkland v. State*, 334 Ga. App. 26, 36 (5) (c) (778 SE2d 42) (2015).

To the extent Harvard argues that defense counsel should have called other expert witnesses, he does not identify them and he made no proffer of their testimony. "Because [Harvard] failed to make any proffer of the uncalled witnesses' testimony, it is impossible for [him] to show there is a reasonable probability the results of the proceedings would have been different." *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) (citation and punctuation omitted).

(b) *Failure to object to hearsay*.

Harvard argues that trial counsel performed deficiently by failing to object on hearsay grounds to two written statements, one from each victim, and to testimony

8

about the victims' disclosures. We hold that Harvard has failed to show that counsel performed deficiently.

(i) *Evidence relating to J. W.*

Hearsay objections to J. W.'s written statement and testimony about her disclosures would have lacked merit. That evidence was admissible under OCGA § 24-8-820, the Child Hearsay Statute. J. W. was under the age of 16 when she wrote the statement and made the disclosures; the state gave notice; J. W. testified; and the witnesses testifying about the disclosures were subject to cross-examination. See OCGA § 24-8-820 (2018). "Counsel's failure to make a meritless hearsay objection cannot be evidence of ineffective assistance of counsel." *Dulcio v. State*, 292 Ga. 645, 651 (3) (b) (740 SE2d 574) (2013).

(ii) *Evidence relating to M. W.*

Harvard argues that trial counsel should have objected on hearsay grounds to the testimony of an investigator with the sheriff's office that M. W. disclosed that Harvard had asked her to watch pornography. But this testimony was not hearsay, as the investigator did not offer it for the truth of the matter asserted, but to explain why he looked for Harvard's computers when executing a search warrant. See OCGA § 24-8-801 (c) ("Hearsay' means a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). So trial counsel did not perform deficiently for failing to object to the testimony on hearsay grounds. *Dulcio*, 292 Ga. at 651 (3) (b).

Harvard argues that trial counsel should have objected to the testimony of three witnesses about M. W.'s disclosures to them. He has not shown prejudice. "Since the judge was acting as both judge and jury at the bench trial, it must be presumed that he has sifted the wheat from the chaff and selected the legal testimony from that which is illegal and incompetent, unless from the judgment itself it appears that consideration was given to testimony that should have been excluded." *Jones v. State*, 318 Ga. App. 614, 618 (5) (734 SE2d 450) (2012) (citation and punctuation omitted). Harvard points to nothing showing that the trial court judge considered testimony that should have been excluded. So he has not shown that he was prejudiced by any failure of trial counsel to lodge a hearsay objection. Cf. *Sullins v. State*, 347 Ga. App. 628 (820 SE2d 468) (2018) (circumstances, unlike here, rebutted presumption that trial judge only considered admissible evidence).

(c) *Failure to present evidence of the victims' behavior*.

Harvard argues that trial counsel should have called witnesses, although in his brief he does not specify whom, to testify that the victims acted normally during the

10

time of the crimes. But witnesses did testify about the victims' behavior around Harvard, including that they "were always smiling" and affectionate toward him; that "[e]verything seemed fine"; that they had a loving relationship; and that they were always "talking and laughing." "[I]t is well settled that the determination of which witnesses to call is a matter of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." *Butler v. State*, 313 Ga. 675, 684 (4) (b) (872 SE2d 722) (2022) (citation and punctuation omitted). When answering appellate counsel's question why she did not call such witnesses, trial counsel testified at the motion for new trial hearing that, on the contrary, evidence of the victims' behavior had been presented. Harvard has not shown that trial counsel's failure to call additional witnesses "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688 (III) (A).

(d) *Failure to present the victims' school and medical records*.

Harvard argues that trial counsel was ineffective for failing to obtain and introduce the victims' school and medical records. He argues that these records "could show patterns of behavior that were inconsistent with a child who has been sexually abused, such as attendance, grades and discipline issues [as well as] normal

11

exams, failure of outcry and whether there was any history of abuse or neglect reported to the physician."

Trial counsel testified that she had reviewed some school records and had no reason to believe that other school records or any medical records contained anything that the defense did not already have that would have been useful at trial. After the trial, the trial court received the records and reviewed them in camera. He determined that the records contained nothing material or relevant to Harvard's guilt or innocence or pertinent to his case. Harvard

> does not point to any specific favorable evidence trial counsel failed to present. This is fatal to his claim. The trial court's ruling after an in-camera inspection that the records did not contain any exculpatory material establishes that as a matter of fact absent a showing to the contrary. Mere speculation is insufficient to satisfy this burden. Because [Harvard] has failed to show that trial counsel failed to produce materially favorable evidence, his ineffectiveness claim fails.

*Edwards v. State*, 301 Ga. 822, 827 (3) (804 SE2d 404) (2017) (citations omitted).

3. *Waiver of right to jury trial*.

Harvard argues that his waiver of his right to a jury trial was not made intelligently because the trial court misinformed him of the potential sentence for the rape count of the indictment. See *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d

12

368) (2002) (state must demonstrate waiver was knowing and intelligent as well as voluntary). We disagree.

Harvard signed a written waiver of his right to a jury trial, and on the Thursday before the Monday trial, the trial court conducted a thorough colloquy concerning Harvard's decision. The court gave Harvard the weekend to consider his decision and reconfirmed it on the morning of trial.

During the Thursday colloquy, the trial court erroneously informed Harvard that the rape count of the indictment "carr[ies] a penalty of not less than five, no more than 20 years in prison, probation or any combination of the two," and then erroneously clarified that the rape count "carries a penalty . . . of not less than 25 years to life in prison, probation, or any combination of the two." However, the 25-year term of imprisonment for rape may not be probated. OCGA § 16-6-1 (b); OCGA § 17-10-6.2 (b).

Trial counsel testified that Harvard raised the issue of a bench trial versus a jury trial and they agreed that the judge in a bench trial would place less emphasis than a jury would on certain images found on Harvard's computer. She testified that there was no doubt in her mind that Harvard made a knowing, intelligent waiver of his right to a jury trial. Harvard, on the other hand, testified at the motion for new trial

13

hearing that he "would've never gone with the bench trial if [he] knew there was a chance [the court] could give [him] 25 years for something [he] didn't do."

But as the trial court found in the order denying Harvard's motion for new trial, Harvard does not suggest how the correctness of the sentencing information would have caused him to make a different jury waiver decision; the potential sentence would be the same whether he was tried at a bench trial or at a jury trial. And the trial court found that counsel had informed the court that Harvard wanted a bench trial "well before the [c]ourt spoke with him about the sentencing ranges." The court concluded that Harvard knowingly and intelligently waived his right to a jury trial.

As explained by other jurisdictions, "[s]entencing . . . is not a consequence of the election to waive a jury trial [in favor of a bench trial]. Regardless of who serves as the trier of fact, the defendant's possible sentences would be the same." *People v. Bannister*, 232 Ill. 2d 52, 69 (II) (A) (902 NE2d 571) (2008) (citations and punctuation omitted). In other words, " [c]onfusion and misinformation regarding the statutory minimum sentence does not impair the knowing and intelligent nature of the defendant's waiver of his right to a jury trial[ in favor of a bench trial], because the two are not related issues." *Commonwealth v. Berte*, 57 Mass. App. Ct. 29, 35 (781 NE2d 14) (2003). Harvard has not shown that the trial court clearly erred in finding

14

that he intelligently and knowingly waived his right to a jury trial. *Agee v. State*, 311 Ga. 340, 344 (2) (857 SE2d 642) (2021).

4. *Denial of post-trial motion for the victims' school and medical records*.

Harvard argues that the trial court erred in denying his post-trial motion to review the victims' school and medical records. He argues that counsel could have used those records at the motion for new trial hearing to show that the victims' behaviors were not consistent with the behavior of victims of abuse. We see no error.

The trial court entered an order regarding a post-conviction status conference, in which he noted that Harvard's post-conviction counsel had requested the victims' medical records. The court stated that he had conducted an in camera inspection of the records and "failed to find any pertinent information or evidence pertaining to [Harvard's] case." The court ordered that the records be sealed and not released to either party. The court also entered an order denying Harvard's request for post-conviction discovery of M. W.'s school records and J. W.'s medical records on the ground that he had examined the records in camera and the records did not contain material or relevant information.

> If the trial court performs an in camera inspection and denies the
> defendant access to certain information, on appeal the appellant has the

burden of showing both the materiality and the favorable nature of the evidence sought. Mere speculation that the items the appellant wishes to review possibly contain exculpatory information does not satisfy this burden.

*Dempsey v. State*, 279 Ga. 546, 548 (3) (615 SE2d 522) (2005). Harvard has not met his burden of showing that the records were relevant to his guilt, innocence, or the appropriate penalty, so we find no error in the trial court's denial of access to those files.

We note that, as the trial court held, trial counsel did present witnesses who testified that they did not witness any "abnormal" behavior from the victims, and the court as factfinder took that evidence into consideration. So Harvard has not shown that introducing any such records would have changed the outcome of the trial.

*Judgment affirmed. Gobeil and Land, JJ., concur*.